**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

**MARIA HIDALGO, ET AL.,**[1]

                    **Plaintiffs,**              **21-cv-10794 (JGK)**

        **- against -**                    **MEMORANDUM OPINION**
                                      **AND ORDER**
**MEISHA PORTER, ET AL.,**

                    **Defendants.**

─────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Maria Hidalgo and Abundio Sanchez – acting
individually and on behalf of their child, L.S., - brought this
action against the defendants, the New York City Department of
Education ("DOE") and its former Chancellor Meisha Porter
pursuant to the Individuals with Disabilities Education Act
("IDEA"), 20 U.S.C. § 1400 et seq.[2] The plaintiffs seek relief
for the loan the plaintiffs obtained for L.S.'s tuition and
transportation expenses at the International Institute for the
Brain ("iBRAIN"). Compl. ¶¶ 16, 70-132, ECF No. 1. The
plaintiffs contend that the DOE violated the IDEA by failing to

─────────────────────────

[1] The Clerk is respectfully requested to correct the caption of this
case to reflect that the lead plaintiff is named "Maria Hidalgo."
[2] On December 16, 2021, Maria Hidalgo and Abundio Sanchez, together
with the parents of four other students with disabilities, commenced
the present action. ECF No. 1; ECF No. 79 ¶ 30. The parties reported
that as of January 28, 2022, the DOE had fully funded and/or
reimbursed all tuition costs for five of six underlying administrative
orders and fully funded and/or reimbursed transportation costs for
four of six underlying administrative orders. See ECF No. 35. The
plaintiffs' current motion for partial summary judgment addresses
reimbursement for loan balances for only L.S.'s education- and
transportation-related expenses.

implement an Independent Hearing Officer's ("IHO")'s final administrative order. See Compl. ¶¶ 291-98. The plaintiffs also seek an award of reasonable attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(I), as the prevailing parties in the administrative proceeding. See Compl. ¶¶ 299-304. Finally, the plaintiffs allege that the defendants violated 42 U.S.C. § 1983, by failing to implement final administrative orders issued in proceedings brought under the IDEA and applicable state law. Id. ¶¶ 305-309. On December 16, 2021, the plaintiffs sought a preliminary injunction ordering the DOE to pay immediately for the services and costs described in the underlying administrative orders, see ECF No. 1, which this Court denied on February 1, 2022, see ECF No. 33.

The plaintiffs have now filed a motion for partial summary judgment. See ECF Nos. 63, 65. In this motion, the plaintiffs seek an order requiring the DOE to comply fully with the Findings of Fact and Decision ("FOFD") that an IHO issued on October 6, 2021. See ECF No. 79 ¶¶ 22, 31; ECF No. 1-1. Specifically, the plaintiffs seek repayment for the remaining balances on the loans obtained for L.S.'s tuition and transportation services.[3]  For the following reasons, the plaintiffs' motion is **denied.**

---

[3] As discussed below, the IHO ordered on remand that the parents be reimbursed by the DOE. See ECF No. 1-1 at 25("IHO Decision"). More

**I.**

Congress enacted the IDEA to ensure that students with disabilities receive an education that adequately addresses their specific needs. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 (2009). Specifically, the IDEA provides that "states receiving federal funds" are required to provide "all children with disabilities a free appropriate public education." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007)(quoting 20 U.S.C. § 1412(a)(1)(A)); see also Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998).[4] A free appropriate public education ("FAPE") must provide "special education and related services tailored to meet the unique needs of a particular child, . . . and be reasonably calculated to enable the child to receive educational benefits." Walczak, 142 F.3d at 122(quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982)).

"To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ("IEP") for each such child." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012) (citing 20 U.S.C. § 1414(d)). The

---

than a year following that decision, on September 12, 2022, the plaintiffs allegedly executed a loan agreement for the costs of L.S.'s tuition and related services. See ECF No. 79 ¶ 37. The parents' motion for partial summary judgment seeks repayment for these loan expenses.
[4] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

IDEA requires that an IEP be "reasonably calculated to enable the child to receive educational benefits[.]" Rowley, 458 U.S. at 207.

Parents in New York who wish to challenge their child's IEP as insufficient under the IDEA may file a Due Process Complaint ("DPC"), requesting an impartial hearing before an IHO, appointed by the local board of education. See Walczak, 142 F.3d at 122. A party may then appeal the decision of the IHO to a State Review Officer ("SRO"), and the SRO's decision may be challenged in either state or federal court. See id. at 122-23; see also 20 U.S.C. §§ 1415(g), 1415(i)(2)(A), and N.Y. Educ. Law § 4404(2).

In addition, if a school district fails to provide a FAPE to a child with disabilities, the child's parents may, at their own financial risk, remove the child from the improper placement, enroll the child in an appropriate private school, and retroactively seek reimbursement for the cost of private school from the state. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 (1985). The Supreme Court has established the three-pronged Burlington/Carter test to determine eligibility for reimbursement, which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs;

4

and (3) a consideration of the equities. See <u>Burlington</u>, 471
U.S. 359 at 370; <u>Florence Cnty. Sch. Dist. Four v. Carter ex</u>
<u>rel. Carter</u>, 510 U.S. 7, 12-14 (1993); <u>see also</u> <u>C.F. v. N.Y.C.</u>
<u>Dep't of Educ.</u>, 746 F.3d 68, 73 (2d Cir. 2014).

## II.

The following facts are taken from the parties' Local Rule
56.1 Statements, the Administrative Record, and supporting
papers and are undisputed unless otherwise noted. This Court may
also take judicial notice of facts "not subject to reasonable
dispute." Fed. R. Evid. 201(b); <u>see, e.g.</u>, <u>Shmueli v. City of</u>
<u>New York</u>, 424 F.3d 231, 233 (2d Cir. 2005).

### A.

L.S. was nine years old during the 2018-2019 academic year,
<u>see</u> ECF No. 62 ¶¶ 1-2; ECF No. 79 ¶ 2, and had been diagnosed
with a disability as defined by the IDEA, <u>see</u> ECF No. 62 ¶ 3.
L.S.'s parents unilaterally moved L.S. to iBRAIN during that
school year. <u>Id.</u> ¶ 7. The cost of tuition and related services
for L.S. at iBRAIN was $218,464.00. <u>See</u> ECF No. 79 ¶ 33. The
cost of special transportation for L.S. was $134,820.00, <u>id.</u> ¶
34, and was provided by a company called "Sisters
Transportation" ("Sisters"), <u>see</u> ECF No. 79 ¶ 32.

By a DPC dated July 9, 2018, the plaintiffs alleged that
the DOE committed procedural and substantive violations that
constituted denial of a FAPE and requested payment by the DOE

directly to iBRAIN for the full cost of tuition for the 2018-
2019 school year and transportation costs, including a 1:1
travel aide. See Hidalgo v. New York City Dep't of Educ., No.
20-cv-98, ECF No. 24-6 at 69-71. On June 5, 2019, the IHO issued
a FOFD, dismissing the plaintiffs' complaint and finding that
the DOE offered L.S. a FAPE for the 2018-2019 school year. See
id. ECF No. 24-1 at 48-72. In an appeal of the IHO's order, the
plaintiffs requested full tuition at iBRAIN as well as payment
for the cost of special transportation. Id. ECF No. 24-2 at 25.
The SRO concluded that L.S. had been denied a FAPE, but that the
plaintiffs had failed to assert any challenges to the IHO's
other adverse findings, thereby abandoning those issues. See id.
ECF No. 24-1 at 35-36. The SRO therefore denied the plaintiffs'
request for reimbursement, see ECF No. 79 ¶¶ 15-17, and the
plaintiffs appealed to this Court, see id. ¶ 18.

**B.**

In a decision remanding the matter, this Court found that
neither the SRO nor the IHO had fully analyzed the second and
third prongs of the Burlington/Carter test. See Hidalgo v. New
York City Dep't of Educ., No. 20-cv-98, 2021 WL 2827037, at *3
(S.D.N.Y. July 7, 2021). This Court therefore remanded the case
to the IHO for further proceedings. Id. at *5. Upon remand, on
October 6, 2021, the IHO found that iBRAIN was an appropriate
placement for L.S. during the 2018-2019 school year and that

6

equitable considerations favored an award of full funding. See
IHO Decision, Compl. ¶ 99; ECF No. 79 ¶ 23.

In reaching this decision, the IHO explained that, for the
2018-2019 school year, iBRAIN provided L.S. with special
education services tailored to meet the special education needs
of L.S. See IHO Decision at 19. Recognizing that "[t]he final
criterion for a reimbursement award is that the parents' claim
must be supported by equitable considerations[,]" the IHO found
that the equities supported reimbursement. Id. at 20. The IHO
therefore concluded that L.S.'s parents were entitled to
reimbursement for L.S.'s tuition at iBRAIN for the 2018-2019
academic year, id. at 21, but that a finding of direct funding
was not supported, id. at 22, based on the parents' ability to
pay. The IHO reasoned that "[s]cant evidence regarding financial
capability came from the mother, and included only . . . that
the father does work . . . and that [a] $100.00 tuition deposit
had been paid . . .." Id. at 22.

The IHO next addressed transportation, noting that the DOE
had provided transportation services for the 2017-2018 school
year and, through Sisters, for the 2018-2019 school year. Id. at
22. The IHO found that L.S.'s parents had entered into a
contract to transport L.S. to and from iBRAIN, with a balance
due of $134,820.00. Id. at 23. The IHO thus found that an award
of DOE funding for that amount was appropriate, by

reimbursement. Id. at 23. The IHO explained: "[S]imilar to Tuition funding, there is no evidence provided as to the financial capability of [the parents] in support of Direct District funding." Id.

Upon reaching these conclusions, the IHO issued an order, finding that the DOE failed to offer L.S. a FAPE for the 2018-2019 academic year, that iBRAIN had served as an appropriate placement for the 2018-2019 school year, and that L.S. was entitled to tuition-related expenses via reimbursement in the amount of $218,416.00 and transportation-related services in the amount of $134,820.00. Id. at 25. Neither party appealed the IHO's order. See ECF No. 62 ¶ 24.

**C.**

On December 16, 2021, the plaintiffs filed the current Complaint and accompanying proposed order to show cause for emergency relief. See ECF Nos. 1, 4. The DOE opposed that motion, expressing its intention to reimburse the plaintiffs for tuition and education expenses upon receipt of the plaintiffs' proof of payment. See ECF No. 17 at 2-3. The DOE clarified that the DOE was "still awaiting documentation from Plaintiffs necessary to authorize reimbursement to the Parent as ordered . . .." Id. at 3. In its Answer, the DOE explained that it had not fully funded all reimbursement costs "because Plaintiffs have

not provided necessary documentation of these costs." ECF No. 24 ¶ 109.

Meanwhile, the plaintiffs applied for and obtained an unsecured loan to pay iBRAIN and Sisters, for which the plaintiffs then sought reimbursement. See ECF No. 79 ¶ 36; Albert Decl. ¶¶ 14-15, ECF No. 64.[5] On September 12, 2022, the plaintiffs allegedly executed a loan agreement with Good Deeds Fund, Inc. (the "Lender") for $222,398.64 for the costs of L.S.'s tuition and related services. See ECF No. 79 ¶ 37; see also ECF No. 57-1 (purported tuition loan statement). On October 6, 2022, the plaintiffs then executed another loan agreement with the Lender for $137,820.00 for transportation services. See ECF No. 79 ¶ 40. The plaintiffs alleged that both loans carried an 8.5% interest rate and a 7% pre-payment penalty. See ECF Nos. 57-1, 57-2.

On November 10, 2022, the DOE filed a joint status report, indicating that the DOE had obtained the documentation necessary to reimburse the costs of L.S.'s 2018-2019 school year, but required additional time to review and process those documents. On February 3, 2023, the DOE completed its review of the supplemental documentation and processed the payments for

---

[5] In its Response to the plaintiffs' Rule 56.1 statement, the DOE disputed all claims related to the plaintiffs' execution of loan agreements "to the extent that [the] DOE lacks independent and corroborating knowledge about the nature of the loan allegedly obtained." See ECF No. 79 ¶¶ 36, 37-42.

tuition and transportation services. See ECF No. 55. But, the DOE did not reimburse the plaintiffs for the costs incurred in obtaining loans to pay for these services. See id.

As of March 23, 2023, the plaintiffs alleged that they owed the Lender $26,935.21 on the unsecured loan for tuition and related services. See ECF No. 79 ¶ 39; Albert Decl. ¶ 29, ECF No. 64. The plaintiffs further alleged that they owed the Lender $16,534.92 on the unsecured loan for special transportation services. See ECF No. 79 ¶ 42; Albert Decl. ¶ 29.[6] In total, the plaintiffs allegedly owe $43,470.13 in purported fee interest and prepayment penalty expenses.[7] That is the amount the plaintiffs now seek from the DOE pursuant to the IDEA.

**III.**

Summary judgment in the IDEA context "is a pragmatic procedural mechanism for reviewing administrative decisions."

---

[6] The Declaration submitted by Abundio Sanchez asserts that the cost of tuition and related services to be reimbursed was $218,464.00, see ECF No. 64-3 ¶ 5, and that the cost of special transportation services was $134,820.00, id. Sanchez then asserts that Maria Hidalgo and Sanchez signed a loan agreement with the Lender in the total amount of $222,398.64, to cover the cost of L.S.'s tuition and related services at iBRAIN, id. ¶ 7, and a loan agreement of $137,820.00 to cover the costs of L.S.'s special transportation services provided by Sisters, id. ¶ 8. The loan amounts were made payable to the plaintiffs' lawyers, so that they would pay both iBRAIN and Sisters for the outstanding amounts owed. Id. ¶ 9. Sanchez declared that "our lawyers paid both iBRAIN and Sisters, and we received receipts that our balance was zero." Id. ¶ 10.

[7] The total balance alleged in the plaintiff's motion for partial summary judgment is $43,338.35. See ECF No. 65 at 14 n. 3. However, the total sum alleged in the plaintiffs' Rule 56.1 statements is $43,470.13. ECF No. 62 ¶¶ 38, 41.

T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009). In reviewing an action pursuant to 20 U.S.C. § 1415(i), the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); see P.C. v. Rye City School District, 232 F. Supp. 3d 394, 406 (S.D.N.Y. 2017).

The court's standard of review is "a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." L.O. ex rel. K.T. v. New York City Dep't of Educ., 822 F.3d 95, 108 (2d Cir. 2016). While the district court independently reviews the administrative record and makes a determination based on a preponderance of the evidence, it is "expected to give due weight to [administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Walczak, 142 F.3d at 129; see also M.H. v. New York City Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012). Deference to the decision in the administrative record is particularly appropriate when the administrative officers' review has been thorough and careful, and when the

court's decision is based solely on the administrative record.
See Walczak, 142 F.3d at 129; Frank G. v. Bd. of Educ., 459 F.3d
356, 367 (2d Cir. 2006).

**IV.**

The plaintiffs request that this Court order the defendants
to fund the remaining balances of L.S.'s tuition and
transportation loans, inclusive of interest, and pre-payment
penalties, and otherwise to ensure that the plaintiffs are not
financially responsible for any aspect of the services L.S.
received during the 2018-2019 academic year. See ECF No. 65 at
21. The defendants respond that the plaintiffs failed to exhaust
their claim for the loan balance, see ECF No. 78 at 17, and the
plaintiffs reply that there was no need to appeal the IHO's
order "because it was favorable to the Plaintiffs and addressed
the costs of attendance and related services[,]" see ECF No. 85
at 6-7.

"This Court has the power to decide only those issues that
were both properly raised in the DPC and not waived by failing
to appeal or cross-appeal to the SRO an adverse finding by the
IHO." Phillips v. Banks, 656 F. Supp. 3d 469, 483 (S.D.N.Y. Feb.
15, 2023) (quoting C.H. v. Goshen Cent. School Dist., No. 11-cv-
6933, 2013 WL 1285387, at *10 (S.D.N.Y. March 28, 2013)). A
plaintiff's failure to exhaust administrative remedies under the
IDEA deprives a court of subject matter jurisdiction. See Polera

v. Bd. of Educ., 288 F.3d 478, 483 (2d Cir. 2002). Proper exhaustion is "critical" because the IDEA's administrative scheme "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." Taylor v. Vt. Dept. of Educ., 313 F.3d 768, 790 (2d Cir. 2002) (quoting Polera, 288 F.3d at 487).

As an initial matter, the plaintiffs' DPC does not and could not demand reimbursement for the purported balances from the Lender that the plaintiffs began to incur in September 2022, more than four years after the plaintiffs filed the DPC in July 2018, and the plaintiffs never sought any other administrative review for the alleged cost of their loans. See Compl. ¶ 70. There is, therefore, no jurisdiction.

Furthermore, the plaintiffs' failure to appeal the IHO's decision precludes any challenge to the reimbursement order. In determining that reimbursement was appropriate, the IHO concluded that a parent "needs to meet the burden of production and persuasion with respect to whether they have the financial resources to 'front' the costs of the [placement] and whether they are legally obligated for the student's tuition payments."

13

ECF No. 1-1 at 22. The IHO found that the plaintiffs were entitled to DOE funding of the 2018-2019 tuition, in the amount of $218,416.00, id. at 22, 25, and transportation services in the amount of $134,820.00, id. at 25, and that the parents had not provided information regarding financial capability, id. at 23. The IHO therefore ordered an award of DOE funding, by reimbursement, id., and the plaintiffs did not appeal the IHO's decision to the SRO, see ECF No. 79 ¶ 25.

The parents now claim the IHO was wrong to conclude that the parents failed to show their financial inability and that the IHO was wrong to impose a remedy of reimbursement to the parents rather than direct funding to iBRAIN and Sisters, which would have obviated the need for a loan. But the parents never exhausted those claims by raising them with the SRO. The plaintiffs rely on Cohen v. N.Y. Dep't of Educ., No. 21-cv-6260, 2023 WL 6258147 (S.D.N.Y. Sept. 26, 2023), in which Judge Vyskocil decided as a matter of first impression that parents need not show their inability to pay for appropriate unilateral placement in order to receive an award of retrospective direct tuition funding. See id. at *5. But Judge Vyskocil decided that issue in a case in which the parents had exhausted their administrative remedies and complained that the SRO had wrongfully required them to show a financial inability to pay, see id. at *2, which the parents failed to do in this case.

14

Moreover, under 20 U.S.C. § 1412(a)(10)(C)(iii)(III), it remains within the discretion of this Court to reduce or deny reimbursement "upon a judicial finding of unreasonableness with respect to actions taken by the parents." From the outset of this proceeding, the DOE provided timely payments, consistent with the IHO's Order. The DOE processed its payments for the plaintiffs' claim for reimbursement of L.S.'s tuition and transportation costs by February 3, 2023, see ECF No. 55, following numerous joint status updates, requesting more time to provide supplemental records and to review the documentation necessary for reimbursement, see, e.g., ECF Nos. 30, 35, 37, 39, 41, 43, 48. Indeed, the plaintiffs provided the requisite supplemental documentation for reimbursement on January 20, 2023 and January 24, 2023, see ECF No. 53, and received their reimbursement by February 3, 2023, see ECF No. 55. There is therefore no reason to provide additional funds.[8]

---

[8] The plaintiffs rely on Streck v. Board of Education of the East Greenbush Center School District to support their contention that the prevailing party on an IDEA claim is entitled to interest on that party's reimbursement award. See 408 F. App'x 411, 414-15 (2d Cir. 2010)(summary order); ECF No. 65 at 10. But in Streck, the Second Circuit Court of Appeals held that the plaintiffs were entitled to interest on educational expenses incurred more than a decade before and after the plaintiffs had exhausted their claims in the administrative proceedings below. See id. at 413-14, 416. There was no issue of failure to exhaust administrative remedies. In this case, the plaintiffs did not appeal the IHO's Order, and thus failed to exhaust their claim for relief.

Finally, the DOE questions the authenticity of the loans in question, see ECF No. 78 at 21-23, but no counterclaim or relevant defense was filed. In any event, it is unnecessary to reach this issue because the plaintiffs failed to exhaust their administrative remedies. See Phillips, 656 F. Supp. 3d at 482-83.

**CONCLUSION**

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, the plaintiffs' motion for partial summary judgment is **denied**. The Clerk is directed to close ECF No. 63.

**SO ORDERED.**

Dated:   New York, New York
         December 20, 2023

                                John G. Koeltl
                          United States District Judge